UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JASON FOSTER, | ) |
| Petitioner, | ) |
| v. | ) Case No. 05-4044 |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

**O R D E R**

This matter is now before the Court on Petitioner, Jason Foster's ("Foster"), Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, Foster's § 2255 Motion [#1] is DENIED.

**BACKGROUND**

On February 13, 2004, Foster pled guilty to conspiracy to distribute and possession with intent to distribute more than 5 kilograms of cocaine in violation of 21 U.S.C. §§ 846. He was sentenced to 120 months' imprisonment, as well as five years of supervised release. On May 19, 2004, his Judgment and Commitment Order was entered. Foster did not pursue a direct appeal.

Foster now brings this § 2255 motion in which he raises essentially three claims of ineffective assistance of counsel: (1) counsel failed to challenge the insufficient pleading in the Indictment; (2) counsel's advice in entering the guilty plea did not represent an intelligent or reasonable choice among alternative actions; and (3) counsel failed to raise

argument pursuant to § 3B1.2(b) of the United States Sentencing Guidelines. The Government has filed its response, and this Order follows.

## DISCUSSION

A petitioner may avail himself of § 2255 relief only if he can show that there are "flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude or result in a complete miscarriage of justice." Boyer v. United States, 55 F.2d 296, 298 (7th Cir. 1995), *cert. denied*, 116 S.Ct. 268 (1995). Section 2255 is limited to correcting errors that "vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude." Guinan v. United States, 6 F.3d 468, 470 (7th Cir. 1993), *citing* Scott v. United States, 997 F.2d 340 (7th Cir. 1993).

A § 2255 motion is not, however, a substitute for a direct appeal. Doe v. United States, 51 F.3d 693, 698 (7th Cir.), *cert. denied*, 116 S.Ct. 205 (1995); McCleese v. United States, 75 F.3d 1174, 1177 (7th Cir. 1996). Federal prisoners may not use § 2255 as a vehicle to circumvent decisions made by the appellate court in a direct appeal. United States v. Frady, 456 U.S. 152, 165 (1982); Doe, 51 F.3d at 698. Accordingly, a petitioner bringing a § 2255 motion is barred from raising: (1) issues raised on direct appeal, absent some showing of new evidence or changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; or (3) constitutional issues that were not raised on direct appeal, absent a showing of cause for the default and actual prejudice from the failure to appeal. Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by* Castellanos v. United States, 26 F.3d 717, 710-20 (7th Cir. 1994).

The seminal case on ineffective assistance of counsel is Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Court stated that in order for a prisoner to

demonstrate that counsel's performance fell below the constitutional standard, the petitioner would have to show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. The courts, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 690. A prisoner must also prove that he has been prejudiced by his counsel's representation by showing "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Absent a sufficient showing of both cause and prejudice, a petitioner's claim must fail. United States v. Delgado, 936 F.2d 303, 311 (7th Cir. 1991).

      I.      Failure to Contest Defective Indictment

Foster argues that the Indictment in this case was deficient because it did not contain all the essential elements that constitute a conspiracy offense, did not apprise him of the charges he must be prepared to meet, and did not sufficiently protect him against double jeopardy. Specifically, he complains that the Indictment did not name any co-conspirators and that absent such names, he could not be adequately apprised of the case that he must prepare to meet. This assertion is without merit under the clearly established law of this Circuit, as the Government is not required to name co-conspirators in an indictment. See United States v. Payton, 328 F.3d 910, 911 (7th Cir. 2003). Furthermore, Foster was provided notice of the charge that he must prepare to meet by the grand jury's statement of the existence of the conspiracy. Id., *citing* United States v. Townsend, 924, F.2d 1385, 1389-90 (7th Cir. 1991).

He next contends that the Indictment failed to allege a minimal amount of specific facts constituting the conspiracy because absent the identification of specific persons allegedly involved in the conspiracy, the Indictment was insufficient to protect him against

double jeopardy. Here, the Indictment contained each of the elements necessary to charge a conspiracy pursuant to § 846, including a specific time frame, a location, the specific illegal act alleged, the amount and type of the controlled substance, and the identification of the federal statute violated. The Indictment alleged a conspiracy with multiple, yet integrally related, objects. This is legally sufficient under the well-established law of the Seventh Circuit. See United States v. Greer, 467 F.2d 1064, 1071 (7th Cir. 1972); Griffin v. United States, 502 U.S. 46, 56 (1991). As a result, counsel was not ineffective for failing to challenge the Indictment.

    II.    Advice Regarding Plea Agreement

Foster argues that his plea was not knowing or voluntary as a result of counsel's erroneous advice. Specifically, he alleges that counsel did not advise him that he was being charged with two separate and distinct offenses, but rather advised him that the jury could find him guilty of the possession with intent to distribute offense simply by finding the elements with respect to the distribution offense or vice versa. He also suggests that counsel failed to present alternative choices to entering a plea.

Counsel's Affidavit indicates that he met or had conversations with Foster on at least 13 occasions prior to his entering his plea, during which the evidence, cooperation, safety valve, acceptance of responsibility, sentencing guidelines, the statutory minimums, and going to trial were all discussed. Foster's awareness of alternatives to pleading guilty is documented by: (1) the fact that Foster was scheduled to proffer then changed his mind; (2) the fact that he requested a plea date in October 2003, then changed his mind and stated that he wanted to proceed to trial; (3) shortly before the trial was scheduled to begin, he again changed his mind and pled guilty. The transcript of the plea colloquy is also enlightening.

Q:  Now that you have been sworn, do you understand that your answers to my questions are subject to the penalties of perjury or of giving a false statement if you don't answer truthfully?

A:  Yes, sir.

* * *

Q:  As you stand there now, is there anything about your past use of drugs that has created a situation for you where you're not able to fully understand what's happening here?

A:  No, Your Honor. I understand.

Q:  Pardon?

A:  I understand.

Q:  Do you have any concerns about that, about fully understanding what's happening here?

Atty:  If I may, Your Honor, I think that Mr. Foster acknowledges that a large portion of his adult life is lost to a fog and it also has affected some of his long-term intellectual skills. I think, if I can speak for him, he knows what he's talking about today. He has a sufficient knowledge and recollection of what you're going to ask him questions about to know what's going on. He has had full ability to ask me questions and talk about it. Sometimes he's a little slow in understanding or comprehending, but I think I can say that every time we have had issues or discussions or concerns, I've been able to visit with him so he understands. It's just he has, if I can say, a lingering impact from his long-term abuse. Would that be appropriate, Mr. Foster?

A:  Yes, it would.

Q:  Well, let me follow up on that a little bit. In terms of your contacts with him, as far as discussing the charges, the discovery, his options, is it your feeling that he has been able to effectively communicate with you and you with him?

Atty:  Yes. I mean, there have been times where he has asked me questions because he hasn't fully understood. We've gone through, talked about it sometimes for probably a half hour on some issues and some subjects, but I believe that at the

- 5 -

> end we've gone through and talked about it and, because of that, I think he has a good understanding, good appreciation.

Q: Well, in terms of this proceeding today, the Court has a very strong interest in being very sure that you do fully understand everything that we're talking about, all the questions that are put to you, so I want to say to you right now if at any time during this dialogue this morning there is anything you don't understand or you would like to have repeated, please tell us that. That's why we're going through this process. We want to be sure you're fully informed and that what you're doing here is fully a voluntary act, okay?

A: Thank you, sir.

\* \* \*

Q: Have you received a copy of the indictment pending against you, that is the written charges made against you in this case?

A: Yes, I have.

Q: Have you fully discussed those charges and the case in general, including any possible defenses that you might have, with Mr. Dusthimer as your attorney?

A: Yes, sir.

Q: Are you fully satisfied with the counsel, representation and advice given to you in this case by your attorney?

A: Yes, sir.

\* \* \*

Q: Are you pleading guilty of your own free will and because you are guilty?

A: Yes, Your Honor.

\* \* \*

Q: Do you understand that you have a right to plead not guilty to any offense charged against you and to persist in that plea?

A: Yes, sir.

Q: Do you understand that you would then have the right to a trial by jury?

A: Yes, I do.

Q: Do you understand that at trial, you would be presumed to be innocent and the Government would have to prove your guilt beyond a reasonable doubt?

A: Yes, sir.

Q: Do you understand that you would have the right to be represented at trial by an attorney to represent you in your defense?

A: Yes.

Q: Do you understand that you would have the right to see and hear all the witnesses and have them cross-examined in your defense?

A: Yes, sir.

Q: Do you understand that you would have the right on your own part to decline to testify unless you voluntarily elected to do so in your own defense?

A: Yes, sir.

Q: Do you understand that you would have the right to the issuance of subpoenas or compulsory process to compel the attendance of witnesses to testify in your defense?

A: Yes, sir.

Q: Do you understand that should you decide at a trial not to testify or not to put on any evidence, those facts or those decisions cannot be used against you?

A: Yes, sir.

Q: Do you further understand that by entering a plea of guilty, if that plea is accepted by the Court there will be no trial and you will have waived or given up your right to a trial as well as those other rights associated with a trial as I've just described them?

A: Yes, sir.

Q: This indictment charges in one count that beginning about December 1999 and continuing until at least July of 2002, in Henry County, which is in this Federal District, and elsewhere, that you did combine, conspire, confederate and agree with other persons to commit an offense under Title 21, United States Code; that is, to knowingly and intentionally distribute and possess with intent to distribute at least 5 kilograms of a mixture and substance containing a detectable amount of cocaine, its salts, optical and geometric isomers and salts of isomers, cocaine being a Schedule II controlled substance.

Now there is no mental state that's actually set out here. Commonly the word "knowingly" might appear in this charge, but when it doesn't appear the law would impose that anyway and what that means is — that word is defined as meaning that your conduct was voluntary, that you understood what you were doing, that your conduct was not the result of ignorance, accident, mistake or some other innocent reason. Do you understand?

A: Yes, sir.

\* \* \*

Q: Any questions about what you're charged with in this indictment?

A: No, Your Honor.

Q: If this count were to go to trial, the Government would be required to prove the following elements beyond a reasonable doubt. First of all, that in the time period charged that the conspiracy as alleged in the indictment did in fact exist. Second, they would have to prove that you knowingly and intentionally became a member of that conspiracy. Third, for purposes of sentencing, they would have to prove that the amount of drugs involved in that conspiracy was at least 5 kilograms of cocaine or a mixture and substance containing cocaine. Do you understand what they would have to prove if this case went to trial?

A: Yes, I do, Your Honor.

\* \* \*

Q: How do you plead to the charge of conspiracy to distribute and possess with intent to distribute at least 5 kilos of a mixture and substance containing a detectable amount of

>     cocaine, its salts, optical and geometric isomers and salts of
>     isomers, as charged in the indictment, guilty or not guilty?
>
> A:   Guilty, Your Honor.

Rule 11 provides for a colloquy that "exposes the defendant's state of mind in the record through personal interrogation." Id., *citing* United States v. Fountain, 777 F.2d 351, 356 (7th Cir. 1985). This aspect of the Rule 11 hearing is especially important with respect to subsequent collateral proceedings, because the representations made by the defendant during a plea colloquy, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding. Id., *citing* Thompson v. Wainwright, 787 F.2d 1447 (11th Cir. 1986); Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 1629 (1977). Furthermore, "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge, 97 S.Ct. at 1629.

After a careful review of the transcript of Foster's Rule 11 hearing, the Court finds that he has failed to overcome the strong presumption of verity which attached to the statements of voluntariness and understanding that he made during that hearing. The plea colloquy clearly demonstrates that Foster was informed of and understood the options available to him, as well as the nature of the conspiracy charge alleged in the Indictment. Accordingly, his bald allegations that he received ineffective assistance of counsel or that but for this ineffective assistance, he would have insisted on going to trial is without merit and does not entitle him to relief. *See* United States v. Arvantis, 902 F.2d 489, 494 (7th Cir. 1990).

### III. Failure to Raise § 3B1.2(b) of the Sentencing Guidelines

Finally, Foster contends that counsel failed to argue that he was entitled to an adjustment as a minimum or minor participant under § 3B1.2(b). In support of this assertion, he suggest that there was overwhelming evidence that his role in the conspiracy was the least culpable among his co-conspirators and would have supported an adjustment for conduct between the minimum and minor roles in the offense. He argues that the evidence established that he was a drug addict who accumulated substantial debts for his personal drug use and became a participant in the drug activities to pay off his debts after running out of property to sell to pay them; he delivered or possessed drugs for safekeeping on only several occasions and acted as more of a gopher.

The Government responds that Foster's claim is flatly contradicted by the record in this case. Counsel in fact argued the minimal and minor role adjustments both in his objections to the Presentence Report and at sentencing, despite the fact that the adjustments could only apply if there was no mandatory minimum sentence. *See* Affidavit of Jack E. Dusthimer. The fact that the Court ultimately rejected counsel's argument does not make his assistance ineffective.

## CONCLUSION

For the reasons set forth herein, Cobb's Motion to Vacate, Set Aside, or Correct Sentence pursuant to § 2255 [#1] is DENIED. This matter is now terminated.

ENTERED this 30th day of November, 2005.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge